Oral Argument Not Yet Scheduled

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

NO. 22-3015
_____

UNITED STATES OF AMERICA

Appellee,

v.

JOSEPH SMITH

Appellant.

APPEAL FROM THE UNITED STATES
DISTRIC COURT FOR THE DISTRICT OF COLUMBIA

Criminal Division
_____

**APPELLANT'S REPLY BRIEF**
_____

Jonathan Zucker, #384629
37 Florida Avenue, NE
Suite 200
Washington, DC 20002
(202)624-0784
jonathanzuckerlaw@gmail.com

Counsel for Appellant
(Appointed by the Court)

U.S. District Court
Crim. No. 19-cr-324 (BAH)

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENTS ........................................................1

ARGUMENTS .................................................................................5

I.  Defendant Was Denied His Sixth Amendment Right to a
    Jury Selected from A Fair Cross Section of the Community ...............5

    A.  The Evidence Demonstrates Unfair and
        Unreasonable Representation........................................................6

    B.  The Evidence Demonstrates Systemic Exclusion ...........................9

II.  Defendant Was Denied His Fourth Amendment Right
     To be Free from Unreasonable Search and Seizure.........................10

III.  The District Court Abused its Discretion In Denying
      Defendant's Request to be Heard Regarding Agent
      Schnur's Presence in the Courtroom ............................................13

IV.  The District Court Failed to Recognize That It
     Has Discretion to Exclude or a Party's Designated
     Representative's Presence Condition............................................15

     A.  Review is For Abuse of Discretion.............................................15

     B.  The Presumption that the Court Knows the Law and
         Applies It Is Overcome by the Record.......................................16

V.  The District Court Erred in Admitting Agent
    Schnur's Expert Testimony .........................................................16

    A.  Smith Did Not Forfeit His Objection
        To Agent Schnur's Expert Testimony .......................................16

    B.  The Government Failed Qualify Agent Schnur
        As An Expert Under Rule 702 ..................................................18

C.  The Government Has Not Demonstrated
    That the Error Was Harmless....................................................................20

Conclusion ...................................................................................................21

# TABLE OF AUTHORITIES

*Allison v. McGhan Med. Corp.*,
   184 F.3d 1300 (11th Cir. 1999) ......................................................................18

*Castaneda v. Partida*,
   430 U.S. 482 (1977)........................................................................................7

*Duren v. Missouri*,
   439 U.S. 357 (1979)........................................................................................6

*Jinro America Inc. v. Secure Investments, Inc.*,
   266 F.3d 993 (9th Cir. 2001) ......................................................................19

*Howell v. Superintendent Rockview SCI*,
   939 F.3d 260 (3d Cir. 2019)........................................................................7, 8

*Murrah v. State of Arkansas*,
   532 F.2d 105 (8th Cir. 1976) ........................................................................8

*Swain v. Alabama*,
   380 U.S. 202 (1965)........................................................................................8

*United States v. Alvarez*,
   837 F.2d 1024 (11th Cir. 1988) ..................................................................20

*United States v. Burris*,
   29 F.4th 1232 (10th Cir. 2022) ..................................................................15

*United States v. Clifford*,
   640 F.2d 150 (8th Cir. 1981) ........................................................................8

*United States v. Diaz–Jimenez*,
   622 F.3d 692 (7th Cir. 2010) ......................................................................17

*United States v. Figueroa-Lopez*,
   125 F.3d 1241 (9th Cir. 1997) ....................................................................19

*United States v. Foster*,
   939 F.2d 445 (7th Cir. 1991) ......................................................................20

*United States v. Freeman*,
  498 F.3d 893 (9th Cir. 2007) ...............................................................20

*United States v. Gault*,
  141 F.3d 1399 (10th Cir. 1998) ...............................................................8

*United States v. Griffith*,
  867 F.3d 1265 (D.C. Cir. 2017) ...............................................................10

*United States v. Hafen*,
  726 F.2d 21 (1st Cir. 1984) ...............................................................7

*United States v. Hara*,
  2007 WL 1814078 (9th Cir. June 21, 2007) ...............................................................8

*United States v. Jackson*,
  60 F.3d 128 (2d Cir. 1995) ...............................................................14

*United States v. Johnson*,
  561 F.2d 832 (D.C.Cir.1977) ...............................................................17

*United States v. Mansoori*,
  304 F.3d 635 (7th Cir. 2002) ...............................................................20, 21

*United States v. Phibbs*,
  999 F.2d 1053 (6th Cir. 1993) ...............................................................15

*United States v. Pion*,
  25 F.3d 18 (1st Cir. 1994) ...............................................................7

*United States v. Shinault*,
  147 F.3d 1266 (10th Cir. 1998) ...............................................................8

*United States v. Yazzie*,
  660 F.2d 422 (10th Cir.1981) ...............................................................8

Fed.R.Evid 611 ................................................................................14

Fed.R.Evid 615 .................................................................2, 3, 4, 13, 14


Chernoff, Nina, *Black to the Future:  The State Action Doctrine
and the White Jury*,
    Vol 58 Washburn L.J. 103, 111 (January 1, 2019)................................6

Chernoff, Nina, *Wrong About the Right: How Courts
Undermine the Fair Cross-Section Guarantee by Confusing It with Equal
Protection*,
    Vol. 64 Hastings Law Journal, 2012 (July 30, 2014) ......................6, 9

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

# No. 22-3015

UNITED STATES

         Appellee,

  v.

JOSEPH SMITH

         Appellant.

_____

**APPELLANT'S REPLY BRIEF**
_____

**SUMMARY OF THE ARGUMENTS**

I.  The government spends a great deal of time in its brief arguing that defendant's Sixth Amendment right to a jury drawn from a fair cross section of the community was not violated because nearly all other courts deny such claims. Defendant contends that is so because those courts improperly import equal protection standards into fair cross section analysis which effectively eliminates the Sixth Amendment right.  Because this court has not had the opportunity to substantively address this issue previously and because there are good reasons not to construe equal protection and fair cross section claims similarly, this court should not reflexively follow its sister circuits.  Rather, it should require district

courts to balance the interests involved and provide defendants meaningful access to this constitutional right.

II. The government contends the search warrant of defendant's home was sufficiently particular in authorizing the search and seizure of all electronic devices and all data contained in them because the warrant stated those items were evidence of the District of Columbia's child abuse statute. However, neither the plain words of the warrant nor the understanding of the searching officers limited the items or data seized. As a result, all 17 devices and all data were seized from defendant's home despite nearly all being irrelevant to the alleged offense. Additionally, the warrant, which did not incorporate the affidavit, was facially deficient as to the place to be searched and the items to be seized. Mr. Smith was, therefore, subjected to an unreasonable search and seizure in violation of his Fourth Amendment rights.

III. The government argues that the district court properly denied defendant's specific request for a hearing after the government filed its written response to defendant's motion to exclude witnesses because he did not challenge that designation or suggest she be excluded despite that designation. The government's argument misunderstands the parties' respective burdens under Rule 615 and the fact that defendant had no opportunity to challenge the government's designation or suggest that Agent Schnur should otherwise be excluded because

2

the court ruled immediately after the government designated its representative. Because the court retains discretion to exclude or condition a party representative's presence and the district court denied defendant's specific request for an opportunity to assert that ground after the government designated Agent Schnur, the district court abused its discretion.

IV.  The district court abused its discretion in denying Mr. Smith's request to exclude Agent Schnur from hearing the testimony of other witnesses because it failed to recognize that it had discretion despite her designation as the government's representative.  The government, first claims review is for plain error because defendant did not respond once the government set forth the basis for her exemption under Rule 615.  However where, as here,  a defendant has no opportunity to raise in the district court the specific ground for relief raised on appeal because the court denied his request for a hearing, the government's argument for plain error review are rejected.  Accordingly, review is for plain error.

The government next claims the district court did not abuse its discretion because it must be presumed that the court knew the law and applied it properly. The record in this case overcomes that presumption by strongly suggesting the court did not believe it had discretion.  It promptly ruled in a minute order after the government designated Agent Schnur as its representative and denied defendant an

3

opportunity to respond, as he had requested.  It found Agent Schnur "plainly exempt" from exclusion under Rule 615(b) and did not indicate that it considered any of defendant's concerns regarding her presence in the courtroom.

V.  The district court erred in admitting Agent Schnur's expert opinion regarding the interpretation of Cellebrite data.  The government first claims that defendant forfeited his objection since defendant did not renew it after the government attempted to lay a foundation.  Defendant objection provided sufficient clarity to put the court and the government on notice that Agent Schnur is not an *expert* and no foundation had been laid.  He further moved to strike her testimony for that reason.  That objection sufficiently preserved the issue for appeal where the government's attempt to cure was insufficient.

The government did not satisfy the foundation for expert testimony under Rule 702 because there was no testimony as to how Agent Schnur's conclusions regarding her interpretation of Cellebrite data depicting incoming and outgoing SMS messages in this case is grounded in her experience of reviewing approximately 100 Cellebrite reports during her career.   Her word that she knows where to find data and understands how incoming and outgoing messages are reported is insufficient.  Because a proper foundation was not laid, it was error to admit Agent Schnur's expert testimony.

The government did not establish that the error was harmless. The prejudice to defendant from the jury confusing Agent Schnur's "expert" opinion with her fact testimony is substantial since there was no attempt to separate the two. Together with the unfair prejudice to defendant of having Agent Schnur present in the courtroom to hear then "clarify" through her own "expert" testimony another government expert witness' opinion, gave the government an unfair advantage to the detriment of the defense.

## ARGUMENTS

### I. Defendant Was Denied His Sixth Amendment Right to a Jury Selected from A Fair Cross Section of the Community

The government does not dispute the district court's findings that a "nontrivial degree of underrepresentation" of Black individuals in its jury pools persisted over time,[1] that the jury summons return rate by Black respondents is 17 percent lower than other respondents, or that when "a jury summons is neither returned completed nor returned as undeliverable, no further action is taken." Nevertheless, it contends there is no Sixth Amendment remedy because out of jurisdiction cases generally construe fair cross section claims as virtually identical to an equal protection claim. *Appellee's Br.* 24-25.

---

[1] The court found an absolute disparity of 10.7% and a comparative disparity of 27.2%. App. 284-285.

Nearly all fair cross section claims are denied because courts "effectively limit the scope of the Sixth Amendment only to what is encompassed by equal protection." Chernoff, Nina, *Black to the Future: The State Action Doctrine and the White Jury*, Vol 58 Washburn L.J. 103, 111 (January 1, 2019); See also, Chernoff, Nina, *Wrong About the Right: How Courts Undermine the Fair Cross-Section Guarantee by Confusing It with Equal Protection* (July 30, 2014). Hastings Law Journal, Vol. 64, 2012, Available at SSRN:https://ssrn.com/abstract=2474232. But there are good reasons why this construction of the Sixth Amendment's fair cross section right is incorrect. *Id.* at 145-146.

Moreover, the government correctly notes that,

> this Court has considered few fair cross-section challenges. And…none of those decisions required substantive analysis of underrepresentation.

*Appellee's Brief,* 24, n.21. For these reasons, this court should decline to reflexively follow out of jurisdiction cases, that mistakenly conflate the equal protection disparity requirement with fair cross section analysis.

## A. The Evidence Demonstrates Unfair and Unreasonable Representation

Under the second *Duran*[2] prong for a fair cross section violation, the question under fair cross-section law is simply whether the representation of a

---

[2] *Duren v. Missouri,* 439 U.S. 357 (1979).

group is "fair and reasonable" in relation to the number of people in the community.  For that reason, it need not be large enough to show "that racial or other class related factors entered into the selection process" as in equal protection cases.  *Castaneda v. Partida*, 430 U.S. 482, 495 n.13.  (1977).

Apparently conceding that the Eleventh and Fifth Circuit cases cited by the district court imported a 10% equal protection threshold to the fair cross section analysis, the government argues that the Third Circuit in *Howell*[3] identified three other circuits (First, Ninth and Tenth) that recognize that absolute disparities below 10% do not reflect unfair and unreasonable representation.  *Appellee's Br.,* 23. *Howell,* however, was not a unanimous decision.  Judge Restrepo in a strong dissent, would have reached the merits of defendant's fair cross section claim despite a 5.83% absolute disparity in that case.  *Howell v. Superintendent Rockview SCI*, 939 F.3d at 273.  Moreover, circuits that rely on a 10% absolute disparity threshold are grounded in their own circuit's precedents reflecting equal protection measures.

For instance, the First Circuit case cited by *Howell,* found no systemic exclusion where the absolute disparity was 3.4%.  *United States v. Pion*, 25 F.3d 18, 23 (1st Cir. 1994).  In reaching that conclusion *Pion* cited to First Circuit precedent.  *Id.* (citing *United States v. Hafen,* 726 F.2d 21, 23 (1st Cir. 1984)).  To

---

[3]  *Howell v. Superintendent Rockview SCI*, 939 F.3d 260 (3d Cir. 2019).

find no fair cross section violation in *Hafen* the court relied on an Eight Circuit case which held that an absolute disparity of 7.2% was insufficient. *Id.* (citing *United States v. Clifford,* 640 F.2d 150 (8th Cir.1981)).  *Clifford* in turn cited to the Supreme Court's *Swain*[4] decision that employed a 10% disparity threshold for showing purposeful discrimination and to its pre *Duran* precedent adopting that threshold as an appropriate standard for finding underrepresentation.  *Id.*  at 155 (citing *Murrah v. State of Arkansas*, 532 F.2d 105, 109 (8th Cir. 1976)).

     *Howell* also cited the Tenth Circuit decision in *United States v. Shinault*, 147 F.3d 1266, 1273 (10th Cir. 1998).  *Howell* at 268.  *Shinault* relied on its circuit's precedent in *United States v. Gault*, 141 F.3d 1399, 1402-03 (10th Cir. 1998), that was also cited by *Howell*.  And *Gault* in turn relied on precedent that held both Fifth Amendment equal protection and Sixth Amendment fair cross section cases "require similar showings." *United States v. Yazzie,* 660 F.2d 422, 426 (10th Cir.1981).  Similarly, the Ninth Circuit holds that to prevail on either a fair cross section or equal protection claim, "[a]ppellant must show a prima facie case for discrimination." *United States v. Hara*, No. 06-10192, 2007 WL 1814078, at *265 (9th Cir. June 21, 2007).

---

[4] *Swain v. Alabama*, 380 U.S. 202, 208–09 (1965).

Because "fair and reasonable" representation is a question of math, rather than intent, reliance on cases that utilize standards required to suggest intent is not appropriate. *Wrong About the Right,* 159-161.  The evidence in this case demonstrated a nontrivial disparity of 10.7% in Black underrepresentation. Accordingly, *Duran's* second prong is satisfied.

### B.  The Evidence Demonstrates Systemic Exclusion

The government also suggests that defendant failed to satisfy *Duran's* third prong requiring that any unfair and unreasonable disparity be the product of "systemic exclusion."   It argues that because Black low response rate to jury summons is an "external force" it is not inherent in the process used to select the jury pool and cites to out of jurisdiction cases that so conclude.  *Appellee Br.,* 26.

Defendant agrees that in denying fair cross section claims, many courts focus on blaming underrepresentation on members of the distinct group and the non-culpability of the jury officials using race neutral systems to find no systemic exclusion.  But "[t]he focus on the blameworthiness of would-be jurors or the blamelessness of jury officials reflects an equal protection construct." *Wrong about the Right,* 181.  It ignores that unlike equal protection in which courts are concerned with culpability for discriminatory actions a state may undertake, the Sixth Amendment protects against what states fail to do.  Focusing on the equal

protection question of fault, fails to take account of the ways in which the jury system affects private choices. *Id.*

The Sixth Amendment requires the government to take affirmative action to ensure its guaranteed rights to a criminal defendant. Accordingly, the "robust debate" suggested by the district court about what actions should be taken to improve the low Black response rate to jury summons in the District of Columbia does not address the injury to defendant from the underrepresentation that existed when he selected his jury. The evidence in this case shows that there existed a nontrivial underrepresentation of Blacks in jury pools that existed over time that was due in part to no follow up action being taken when jury summonses were not returned. Because the evidence demonstrated a prima facie case of a fair cross section violation, defendant is entitled to a new trial in which he has an opportunity to select a jury from a fair cross section of the community.

## II. Defendant Was Denied His Fourth Amendment Right To be Free from Unreasonable Search and Seizure

Defendant challenged the district's rationale for excusing the lack of particularity in the search warrant regarding the relevant cell phones.[5] *Appellant's Br.,* 22. The government does not deny that law enforcement knew or could have

---

[5] Citing this court's decision in *United States v. Griffith,* 867 F.3d 1265 (D.C. Cir. 2017), the district court stated there is no reason to "believe that law enforcement, at the time of the search, could specifically identify the cell phone in question." App. 114-115.

determined the makes and models of the relevant cell phones at the time of the affidavit through a reasonable investigation. Instead, it argues that *Giffith* has no application here because the affidavit in this case limited the scope of permissible seizure to devices linked to sexual abuse. *Appellee's Br.,* 39.

To the contrary, the warrant authorized the seizure of cell phones, computers, tablets, etc in defendant's home and the extraction of all data from them that it further asserts "is evidence of an offense in violation of DC Code 22-3008." The affidavit, however, did not set forth probable cause that all the identified categories of electronic equipment in the home was evidence of the offense. It only set forth probable cause to believe that two cell phones–defendant's and A.S.'s--and a computer might contain evidence of the alleged offense. However, it omitted the descriptions of those cell phones, that A.S. provided during her CAC interview.  That the warrant was not limited to devices linked to the alleged child sex abuse is evidenced by the fact that police seized 17 devices of which only 2 cellphones (rose and gold iPhone and a Motorola) and 1 computer constituted evidence of the offense.

The government contends that the "affidavit provided ample reason to believe that Smith's apartment contained cellphones of evidentiary value *in addition* to Smith's (*e.g.*, AS's and AS's mother's)." *Appellee's Br.,* 44.  Yet the

warrant did not describe those phones that it knew or could have determined by simply asking A.S. or her mother.

Similarly, the warrant authorized the seizure of "all electronic data stored inside" the devices without limiting searches of that data to evidence of the charged offense or identifying the categories of items to be searched for.  The government argues that because law enforcement could not have known where evidence was located in the devices or in what format, an expansive search of all data was necessary.  *Appellee's Br.,* 40.  The affidavit, however, contains no facts from which to find probable cause that a search of all data was necessary.

In fact, the government through its expansive search of all data on all devices, seized much more than evidence linked to the alleged child sex abuse offense.   According to the government they found "all kind of nastiness" that the prosecutor admitted was "not relevant" to the charged offense. App. 214-215.  The warrant authorized seizure of all electronic devices found in the home, not just those belonging to defendant, A.S. and her mother.  It authorized the extraction of all data from them regardless of who they belonged to and despite lack of cause to believe all electronic devices would contain evidence of the offense.  Accordingly, the warrant violated the Fourth Amendment.

The government claims the good faith exception applies because the warrant was facially valid.   While the warrant stated that the place to be searched was

12

apartment #32 at 1301 C Street, SE, there was no apartment so labeled at that address.  The government contends that the affidavit provided sufficient information from which to determine which apartment was #32.  The warrant, however, does not incorporate the affidavit to cure this facial deficiency.  Nor did the warrant by its plain wording limit the scope of the seizure to evidence of the alleged offense.

### III.  The District Court Abused its Discretion In Denying Defendant's Request to be Heard Regarding Agent Schnur's Presence in the Courtroom

The government incorrectly contends that the court properly denied defendant's request to be heard following the government's written opposition to his Motion to Exclude Witnesses pursuant to Rule 615 because he "fail[ed] to challenge that designation (or to suggest that she should be excluded notwithstanding that designation)."  *Appellee's Br.*  50 n.31.  The government's arguments are based on a misunderstanding of the parties' burdens under Rule 615 and the fact that despite his specific request for a hearing was given no opportunity to respond to the government designation in order to support his position that Agent Schnur's presence should nonetheless be excluded. [6]

---

[6]  Given the short notice to defendant of the government intention to have Agent Schnur present throughout trial, defendant specifically requested a hearing following the government's written response to his motion so that he could "set forth all the reasons he objects to Agent Schnur remaining at counsel table." App. 129 n.1.  Had defendant been given an opportunity to respond, after the government provided a

Because Rule 615 carries a "strong presumption in favor of sequestration of witnesses" defendant properly sought to exclude all witnesses from hearing the testimony of others pursuant to that rule. *United States v. Jackson*, 60 F.3d 128, 135 (2d Cir. 1995). The party opposing sequestration then,

> has the burden of demonstrating why the pertinent Rule 615 exception applies and why the policy of the Rule in favor of automatic sequestration is inapplicable in that situation. *The party requesting sequestration should thereafter have a chance to demonstrate its necessity.* Such an exchange affords the court full opportunity to consider the competing interests and, if it denies the motion, to explain the factors it considered in reaching its decision.

*Id.* (emphasis added).

In response to defendant's motion, the government invoked two Rule 615 exceptions. It designated Agent Schnur as its representative under Rule 615(b) and explained why her presence was essential to presenting its case under subsection (c). However, before defendant had a chance to respond, the district court ruled within hours of the government's filing. It granted defendant's motion to exclude all witnesses with the exception of Agent Schnur and denied his request for a hearing. App. 31, Minute Order 10/9/2021.

---

basis for exclusion under Rule 615, defendant, at a minimum, would have requested that Agent Schnur be excluded during A.S.'s testimony or testify before A.S. in accordance with Rule 611(a) and the court's inherent power.

Because the district court retains discretion to exclude or condition a party's designated representative's presence,[7] it was an abuse of discretion to deny defendant an opportunity to respond to the government's designation and to be fully heard on his objections to Agent Schnur's presence.

### IV.  The District Court Failed to Recognize That It Has Discretion to Exclude or Condition a Party's Designated Representative's Presence

### A.  Review is For Abuse of Discretion

The government contends that review is for plain error because defendant never raised below the district court's inherent power to regulate a party's designated representation's presence.  *Appellee's Br.,* 48-49.  It faults defendant for not responding once the government set forth the basis for her exemption under Rule 615.  *Id.*  When a defendant has no opportunity to raise in the district court the specific ground for relief raised on appeal because the court denied his request for a hearing, the government's arguments for plain error review are rejected. See, *United States v. Burris*, 29 F.4th 1232, 1235 (10th Cir. 2022).  Accordingly, review is for abuse of discretion.

---

[7]  *Appellant's Br.,* 31-32, see also  *United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993)(holding that the district court had addressed defendant's concern by "direct[ing] that, when one of [the two agents exempted from exclusion] was on the stand, the other was to be outside the courtroom," and indicating that "[s]uch a measure could be taken, not only on the basis of the court's inherent powers of trial oversight, but also in reliance upon Rule 615 itself").

### B.  The Presumption that the Court Knows the Law and
### Applies It Is Overcome by the Record

The government argues that the district court did not abuse its discretion in denying defendant's request to exclude Agent Schnur because a court must be presumed to know the law and apply it.  *Appellee's Br.* 50.   In this case, that means that the district court knew it had discretion to exclude or condition Agent Schnur's presence despite her designation as a party's representative under Rule 615.  While defendant does not dispute that Judge Howell is a highly respected and seasoned trial judge, the record in this case overcomes the presumption with respect to this issue.

The court promptly ruled after the government designated Agent Schnur as its representative and denied defendant's request to be heard "since Agent Schur is plainly exempt from exclusion" under Rule 615(b).  And, there is no indication in its ruling that it considered any of the concerns defendant raised for excluding her. These facts strongly suggest that the court did not recognize that it had discretion to otherwise exclude or condition Agent's Schnur's presence.   Because a court's failure to recognize that it has discretion is an abuse of discretion, the district court erred.  *Appellant's Br.,* 32.

### V.  The District Court Erred in Admitting Agent
### Schnur's Expert Testimony

### A.  Smith Did Not Forfeit His Objection
### To Agent Schnur's Expert Testimony

16

The government incorrectly contends that review of the admission of Agent Schnur's expert opinion is for plain error. *Appellee's Br.* 56. It argues that defendant forfeited this issue for appeal because he didn't object after the government attempted to lay a foundation for her testimony. *Id.*

Mr. Smith is not seeking to advance a new argument on appeal, but rather to give more emphasis to an argument previously made. When Agent Schnur began interpreting extracted data from a Cellebrite report, defendant objected stating "[t]he government hasn't laid a foundation that she's an expert" and moved to strike the testimony. App. 198-199.

> The issue in determining the applicability of the plain error rule ... is whether the issue was raised by the defense team with sufficient clarity to put the government and the trial court on notice that the issue had been raised.

*United States v. Johnson,* 561 F.2d 832, 854 (D.C.Cir.1977).

Here, defendant's objection provided sufficient clarity to put the government and the trial court on notice that he was challenging Agent Schnur's testimony as an *expert* for lack of a foundation. In response to the objection, the court inquired about the witness' qualifications to render an opinion. The prosecutor indicated that she "would be happy to lay a foundation," but as set forth below, failed to do so. *See e.g., United States v. Diaz–Jimenez,* 622 F.3d 692, 693–94 (7th Cir. 2010)(finding defendant's objection sufficient to preserve issue for appeal despite

failure to renew objection after government's attempt to cure).  Accordingly,

review is for abuse of discretion.

### B.  The Government Failed to Qualify Agent Schnur
### As An Expert Under Rule 702

On appeal, the government agrees that Rule 702 governing expert opinions,

rather than Rule 701 governing lay opinions, applies to Agent Schnur's

interpretation of extracted data from the Cellebrite report. *Appellee's Br.,* 58.

However, by contrasting the foundations the prosecutor laid to qualify its

designated experts with the foundation it laid for Agent Schnur, it appears that at

trial the government (and the trial court) considered Agent's Schnur's testimony as

lay opinion under Rule 701 rather than expert opinion under Rule 702.[8]   To the

extent the government was unsure of which rule applied, it was incumbent on the

prosecutor to seek clarification since "the burden of laying a proper foundation for

the admission of expert testimony is on the party offering the evidence." *Allison v.*

*McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).   Nevertheless, the

government argues that a proper foundation was laid under Rule 702.  *Appellee's*

*Br.,* 58-60.

---

[8] That the court also incorrectly believed that Agent Schnur's testimony was lay opinion is evidence by its instruction to the jury regarding how to evaluate expert testimony.  While naming all the other government expert witnesses, it omitted Agent Schnur. Tr. 10/26/21, 187-188.

Because all expert testimony "must be the product of reliable principles and methods that are reliably applied to the facts of the case," the expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."  Fed. R. Evid. 702, advisory committee notes, 2000 amends.  Moreover, "[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it."  *Id., See also, Jinro America Inc. v. Secure Investments, Inc.,* 266 F.3d 993, 1004 (9th Cir. 2001)(noting that because expert testimony is "likely to carry special weight with the jury ... care must be taken to assure that a proffered witness truly qualifies as an expert").

Even if Agent Schnur's review of approximately 100 Cellebrite reports as an investigator of child sex abuse crimes, provided some familiarity in the use of Cellebrite reports, it does not explain how her opinions regarding the interpretation of incoming and outgoing SMS messages are so grounded.  Her testimony that she knows where to find data in a Cellebrite report and understands how such reports indicate incoming and outgoing messages, is insufficient.  "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997).

Nor did the court require more than simply taking Agent Schnur's word for it.  Because the foundational requirements for Rule 702 expert testimony were not satisfied, the district court abused its discretion in implicitly overruling defendant's objection and failing to strike her opinion testimony.

### C.  The Government Has Not Demonstrated That the Error Was Harmless

Courts have long noted the risk of prejudice when lay witnesses also provide expert testimony.  *United States v. Alvarez,* 837 F.2d 1024, 1030 (11th Cir.1988) ("Where a government law enforcement agent testifies as an expert, on behalf of the prosecution, a serious risk of undue prejudice exists."); *United States v. Foster,* 939 F.2d 445, 452 (7th Cir. 1991)(when expert witness also serves as an eyewitness, district court and the prosecutor should be vigilant in ensuring that "the jury understands its function in evaluating the evidence and is not confused by the witness's dual role"); *United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007) ("we are concerned that a case agent who testifies as an expert receives 'unmerited credibility' for lay testimony.")  The risk is that the jury will be confused as to which aspects of the witness' testimony were opinions and which were factual in nature.  *United States v. Mansoori*, 304 F.3d 635, 654 (7th Cir. 2002).

An important factor, in *Mansoori,* where the court found no real possibility that the jury may have been led to mistakenly credit the witness' opinion as facts was that the government structured its examination of the witness in such a way as

to separate his opinions as an expert from his factual observations as an occurrence witness. *Id.* Here, however, the risk that the jury would credit Agent Schnur's opinions as fact is substantial. Her "expert" opinions interpreting the Cellebrite data incoming and outgoing SMS messages were intermixed with her fact testimony regarding the investigation and were not limited to interpreting Exhibit 113 but other SMS messages for the purpose of establishing that defendant was the owner and user of the Motorola.

This prejudice together with the unfair prejudice to defendant of being ambushed at trial with an expert opinions that had not been disclosed pretrial in order to "clarify" another government expert witness' testimony that benefited the defense, gave the government an unfair advantage.

## Conclusion

For the foregoing reasons and those set forth in defendant's opening brief, defendant respectfully requests that the court reverse his convictions and remand for a new trial.

Respectfully submitted,

_/s/_____
Jonathan Zucker, #384629
37 Florida Avenue, NE, #200
Washington, DC 20002
202-624-0784
jonathanzuckerlaw@gmail.com
*Counsel for Appellant*
(Appointed by the Court)

21

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Fed. R. App. P. 32(g) that this reply brief contains 4,723 words, and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).  This brief has been prepared in 14-point Times New Roman typeface.


___/s/_____
Jonathan Zucker


## CERTIFICATE OF SERVICE

I certify that on this 10th day of April, 2023 I have caused a copy of the foregoing Appellant's Reply Brief to be served by electronic means, through the Court's CM/ECF system upon counsel for appellee, Assistant United States Attorney David B. Goodhand at david.goodhand2@usdoj.gov.


___/s/_____
Jonathan Zucker